UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

                                                    Case No. 06-20479

v.

                                                   Honorable Patrick J. Duggan

D-1 RAYMOND YONO,

    Defendant.

_____/

**OPINION AND ORDER DENYING DEFENDANT'S
MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT OR FOR
NEW TRIAL**

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on December 4, 2008.

PRESENT:       THE HONORABLE PATRICK J. DUGGAN
                        U.S. DISTRICT COURT JUDGE

Defendant Raymond Yono was convicted after a four day jury trial of four counts of bank fraud (18 U.S.C. § 1344) and one count of altering United States obligations (18 U.S.C. § 471). Presently before the Court is Defendant's Motion for Judgment in Favor of the Defendant Notwithstanding the Verdict or, in the Alternative, for a New Trial. In his motion, Defendant argues that he is entitled to the requested relief on three separate grounds: (1) the verdict was against the great weight of the evidence, (2) a series of errors violated his rights to due process and effective assistance of counsel, and (3) his right to a fair trial was prejudiced by the failure to refer him for a competency hearing.

## I. The Great Weight of the Evidence

"In ruling upon a motion for a new trial based on the ground that the verdict is against the weight of the evidence, a district judge may compare the opposing proofs and weigh the evidence and it is the duty of the judge to set aside the verdict and grant a new trial if he is of the opinion that the verdict is against the clear weight of the evidence." *Toth v. Yoder Co.*, 749 F.2d 1190, 1197 (6th Cir. 1984). Nonetheless, "[c]ourts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." *Tennant v. Peoria & P.U. Ry. Co.*, 321 U.S. 29, 35, 64 S. Ct. 409, 412 (1944). Therefore, "the jury's verdict should be accepted if it is one which could reasonably have been reached." *Bruner v. Dunaway*, 684 F.2d 420, 425 (6th Cir. 1982).

Defendant's assertion that his convictions are against the great weight of the evidence appears in a single paragraph of his motion without any accompanying factual support or argument. Therefore, Defendant has waived this argument. *See Al-Najar v. Mukasey*, 515 F.3d 708, 717 (6th Cir. 2008) ("His argument is made without citation to either the record or to any case law and is therefore waived."). Furthermore, this Court's independent review of the record failed to reveal support for Defendant's claim.

## II. Due Process and Effective Assistance of Counsel

Defendant next claims that he was denied due process and effective assistance of counsel because of a series of errors that occurred during trial. Defendant specifically alleges seven errors in support of this claim: (1) the admission of a handwriting expert's

testimony unfairly bolstered eye witness testimony, (2) evidence of Defendant's alleged gambling was insufficiently supported by the government's evidence, (3) the government failed to properly investigate and preserve potentially exculpatory evidence at a UPS store, (4) the government inappropriately used hearsay testimony to prove Defendant's rental of a UPS box, (5) the government withheld potentially exculpatory evidence contained in Defendant's credit report, (6) the government improperly admitted and attempted to admit inadmissible bad acts evidence, and (7) this Court erroneously denied Defendant a continuance to obtain records from the Michigan Secretary of State and the United States Post Office. Defendant is only entitled to a new trial if, in light of the alleged errors, "the interest of justice so requires." Fed. R. Crim. P. 33(a). Each of the alleged errors will be addressed in turn.

**A. Expert Testimony**

In his motion, Defendant states that "his right to a fair trial was prejudiced by the admission of alleged 'expert' opinion testimony, which allowed the government, on the eve of trial, to unfairly bolster eye witness testimony." (Def.'s Mot. ¶ 4.) Defendant's assertion relates to the testimony of Richard Dusak regarding his opinion about signatures on various documents related to the case. Defendant received Dusak's report on June 19, 2008. The next day Defendant filed a motion to exclude Dusak's testimony or, in the alternative, for a *Daubert* hearing and the government responded. Trial began June 23, 2008. This Court held a *Daubert* hearing on the morning of June 25, 2008, and thereafter denied Defendant's motion to exclude Dusak's testimony. Dusak testified later that day.

Defendant again fails to present any factual support or argument to establish that Dusak's testimony was erroneously admitted. Before denying Defendant's motion to exclude, this Court heard testimony regarding each of the *Daubert* factors and concluded that the methods and techniques used by Dusak were sufficiently reliable to warrant the admission of his testimony at trial. Nothing in the record or Defendant's motion suggests that this conclusion was made in error. Furthermore, Defendant makes no argument that he needed additional time to prepare for Dusak's testimony. Therefore, Defendant's assertion that Dusak's testimony "unfairly bolstered eyewitness testimony" lacks merit.

**B. Defendant's Gambling**

Defendant next argues "that his right to a fair trial was prejudiced by the introduction of alleged 'proof' of Defendant's alleged 'gambling' problem, when the government's own records indicated that the casino records in question might not support the conclusion argued by the prosecution." (Def.'s Mot. ¶ 5.) Defendant's argument is speculative and lacks merit.

During opening statements, defense counsel suggested that the government could not trace the proceeds of the alleged bank fraud to Defendant. (Trial Trans. Vol. I at 86). In response, the government presented testimony suggesting that Defendant spent large amounts of money and time at local casinos. (Trial Trans. Vol. II at 115-20.) To support this testimony, the government admitted 39 W2 forms that Defendant received from Motor City Casino for winnings that exceeded $1,000. (*Id.*) As to this evidence, the jury was free to make its own determination regarding whether the records supported the conclusion argued by the government. Beyond this evidence, Defendant fails to identify other "casino records"

4

possessed by the government that "might not" have supported this theory about how Defendant spent the proceeds of the bank fraud. Therefore, Defendant is not entitled to relief on this ground.

**C. Investigation and Preservation of UPS Store Records**

Defendant asserts that the government prejudiced his right to a fair trial when it failed to investigate and preserve potentially exculpatory records of a UPS store before it went out of business. This assertion fails to present a due process violation. While the government cannot ignore exculpatory information of which it is aware, it has no affirmative duty to investigate and uncover such evidence. *See Logsdon v. Hains*, 492 F.3d 334, 341 (6th Cir. 2007). Furthermore, mere speculation that missing evidence would have been exculpatory is insufficient to establish a due process violation. *See United States v. Jobson*, 102 F.3d 214, 219 (6th Cir. 1996).

**D. Hearsay Testimony**

Related to his previous argument, Defendant asserts that his right to a fair trial was violated by the admission of hearsay testimony regarding Defendant's alleged rental of a UPS box. Although Defendant denied renting the box, Agent Robert Westenberg, the Secret Service Agent in charge of this case, testified that two of the defrauded banks mailed account statements to Defendant at the box address and that one of Defendant's driver's licenses bore that address. (Trial Trans. Vol. II at 101; Trial Trans. Vol. III at 200.) These documents provided an admissible foundation for Westenberg's testimony regarding the link between Defendant and the UPS box. That this conclusion may also have been supported by the

5

hearsay statement of an employee at the UPS store does not make Westenberg's testimony inadmissible. Furthermore, it was defense counsel, not the government, that elicited testimony about the content of the UPS employee's hearsay statements in an attempt to minimize Defendant's association with the box. In response to defense counsel's questions, Westenberg admitted that the UPS employee would only confirm the association between the box number and Defendant's name while refusing to disclose when the account was opened, who opened the account, or who paid for it. (Trial Trans. Vol. II at 137; Trial Trans. Vol. III at 203-04.) Considering the trial testimony, this Court cannot conclude that Westenberg's statements about the UPS box were based on inadmissible hearsay or, to the extent defense counsel attempted to elicit hearsay testimony on the topic, that Defendant was prejudiced.

### E. Failure to Disclose Defendant's Credit Reports

Defendant also argues that his right to a fair trial was prejudiced by the government's failure to disclose the existence of credit reports in his name "which could have possibly led to exculpatory evidence by alerting the Defendant that there may have been other instances of identity theft." (Def.'s Mot. ¶ 8.) In essence, then, Defendant asserts that the government committed a *Brady* violation. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963). "*Brady* requires the prosecution to disclose exculpatory and impeachment evidence that is material either to guilt or to punishment." *Beuke v. Houk*, 537 F.3d 618, 633 (6th Cir. 2008) (internal quotation omitted). "A *Brady* violation occurs when the evidence at issue is favorable to the accused, the evidence was suppressed by the State, and prejudice resulted."

*Wilson v. Parker*, 515 F.3d 682, 703 (6th Cir. 2008). "No *Brady* violation exists," however, "where the evidence is available to defendant from another source." *United States v. Clark*, 928 F.2d 733, 738 (6th Cir. 1991).

The allegedly suppressed evidence in this case is Defendant's credit report. Individuals can obtain copies of their credit reports from credit bureaus upon request. Indeed, federal law requires that credit bureaus provide a copy of the report "once during any 12-month period upon request of the consumer and without charge to the consumer." 15 U.S.C. § 1681j(a)(1)(A). Because Defendant's credit report is available to him from other sources, he has failed to establish a *Brady* violation.

**F. Bad Acts Evidence**

Defendant's sixth allegation of error consists of a list of "bad acts" evidence that the government allegedly either admitted or sought to admit in violation of Rule 404(b) of the Federal Rules of Evidence. Federal Rule of Evidence 404(b) provides in relevant part:

> "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ."

In determining the admissibility of bad acts evidence, this Court applies a three-part test:

> *First*, the district court must decide whether there is sufficient evidence that the other act in question actually occurred. *Second*, if so, the district court must decide whether the evidence of the other act is probative of a material issue other than character. *Third*, if the evidence is probative of a material issue other than character, the district court must decide whether the probative value of the evidence is substantially outweighed by its potential prejudicial effect.

*United States v. Jenkins*, 345 F.3d 928, 937 (6th Cir. 2003). In this case, however, Defendant did not object at trial to the evidence which he now alleges was admitted in error. Therefore, the admission of bad acts evidence warrants reversal in this case only if Defendant's "substantial rights" were affected. *See United States v. White*, 492 F.3d 380, 404 (6th Cir. 2007). To impact a defendant's substantial rights, erroneously admitted evidence must have contributed to the verdict obtained. *Id.* None of the errors alleged by Defendant warrant reversal.

Altogether, Defendant alleges that the government erroneously admitted bad acts evidence on seven topics. Three of those allegations lack support in the record. Although Defendant complains about the admission of evidence that he "scammed credit cards" and "failed to report 'income' reflected in casino records," (Def.'s Mot. ¶ 9), the Court can find no such evidence in the trial transcript. The limited testimony regarding Defendant's credit card accounts contains no suggestion that he was engaged in a scam and defense counsel's objection to a single question about the reporting of gambling income to Social Security was sustained. (Trial Trans. Vol. IV at 121-22, 135.) Defendant also complains about testimony that he was "'cheating' the Social Security Administration by falsely reporting, in 1995, that checks had not been received and replacements were improperly issued." (Def.'s Mot. ¶ 9.) A review of the record reveals, however, that it was defense counsel who elicited testimony about the replacement checks while the government objected to the relevancy of that information. (Trial Trans. Vol. II at 65-66, 78-80.) The testimony was elicited to explain Social Security's payment records, not to establish Defendant's guilt for the charged crimes.

When viewed in this context, Defendant has failed to establish that the evidence was admitted in violation of Rule 404(b) or, if it was, that it affected his substantial rights.

The remaining four evidentiary topics about which Defendant complains did not affect his substantial rights. During the trial, the government elicited testimony that Defendant reported an income of $3,600 a month on an apartment lease application and that he never reported any income to Social Security. (*Id*. at 19, 39; Trial Trans. Vol. IV at 88.) Although he did not object to this evidence at trial, Defendant now argues that this evidence was erroneously admitted to portray him as a "manipulative 'bad man.'" (Def.'s Mot. ¶ 9.) Even if this evidence was inadmissible as bad acts evidence at the time it was elicited, the government could have raised these issues during cross-examination of Defendant once he took the stand. *See* Fed. R. Evid. 608(b) (allowing admission of specific instances of untruthful conduct on cross-examination of a witness). Because the evidence was ultimately admissible, its admission did not affect Defendant's substantial rights.

The final two topics Defendant alleges were erroneously admitted under Rule 404(b) were mentioned only briefly at trial. Defendant complains that the government made "*attempts* to show the Defendant *may* have defaulted on a judgment regarding past-due rent." (*Id.* (emphasis added).) Defendant's characterization of the government's conduct as an "attempt" is fitting because nowhere in the record is there testimony regarding a judgment against Defendant for past-due rent or any default thereon. Although Defendant's apartment manager testified that a bill was sent to collections after Defendant moved out, there was no testimony regarding the source or resolution of that bill. (Trial Trans. Vol. II at 22-23.)

9

Additionally, the Court later sustained an objection to use of the term "eviction" when discussing Defendant's residency at the apartment. (*Id.* at 100.) On these facts, the Court concludes that testimony regarding the termination of Defendant's rental agreement with the apartment did not affect the outcome of the case. Finally, Defendant complains about testimony that he was banned from a casino. While explaining his investigation, Westenberg made a single remark that Defendant had been banned from a casino. (*Id.* at 115.) No further inquiry was made into the topic. Defendant cannot show that this single statement affected his substantial rights. Therefore, Defendant is not entitled to a new trial on grounds that erroneously admitted bad acts evidence prejudiced his right to a fair trial.

## G. Failure to Grant a Continuance

Defendant's final allegation of trial error is that the Court prejudiced his right to a fair trial when it failed to grant a continuance for defense counsel to secure records from the Michigan Secretary of State and the United States Post Office. The decision whether to grant a continuance is within the discretion of the trial judge based on consideration of several factors including "the convenience or inconvenience to the parties, witnesses, counsel and the court; . . . whether the defendant contributed to the circumstances giving rise to the request; [and] whether denying the continuance will result in identifiable prejudice to defendant's case . . . ." *Powell v. Collins*, 332 F.3d 376, 396 (6th Cir. 2003).

Defendant has yet to articulate the significance of the identified records to his defense. On the third day of trial, defense counsel stated to the Court, "I think there are additional records with the Secretary of State that may be necessary to make the final link. And I am

10

hopeful I will have that this afternoon. But barring that, I would ask for time to secure that." (Trial Trans. Vol. III at 151-52.) In his motion for new trial, Defendant states that the records "might prove exculpatory." (Def.'s Mot. ¶¶ 10, 11.) No further explanation of the records, or what they might prove, has been offered to the Court. Therefore, the Court did not err or prejudice Defendant's right to a fair trial when it refused to grant a continuance in the midst of trial.

**III. Competency Hearing**

Defendant, through his defense counsel:

> [R]aises, in support of this Motion for a New Trial, the issue of Mr. Yono's competency, and requests the Court Order a hearing to determine whether Mr. Yono "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding–and whether he has a rational as well as factual understanding of the proceedings against him."

(Def.'s Brief at 2 (citation omitted).) A competency hearing is appropriate where "there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a). Defense counsel acknowledges in the motion for a new trial that "defense counsel is often in the best position to determine whether a defendant's competency is questionable." *McGregor v. Gibson*, 248 F.3d 946, 960 (internal quotation omitted). At no time during trial, however, did defense counsel alert the Court to any concern regarding Mr. Yono's competency.

Prior to trial, though, on March 2, 2007, the Court entered an order, pursuant to

11

stipulation of parties, authorizing Michael F. Abramski "to perform a psychological examination of Defendant as to competency, criminal responsibility, and to assist him with the preparation and presentation of his defense, and in connection with motion hearings, the trial, and if necessary, the sentencing in this matter." On October 25, 2007, however, the parties agreed to the withdrawal of an order for a psychological examination. While the record does not reflect whether or not a psychological examination took place between March 2 and October 25, 2007, it is reasonable to conclude that either the psychological examination took place and the results were not "favorable to the defense" or that defense counsel concluded that there was no need for the psychological examination.

Even so, in support of her claim that Defendant was not able to assist in his defense, counsel asserts that:

> Mr. Yono was incapable of assisting Counsel during the trial because of his inability to follow the trial because of the "fast pace," and his inability to comprehend and appropriately react to the testimony. Mr. Yono, during the trial, often became overwhelmed and frustrated by his inability to grasp what was happening. Mr. Yono refused to assist by taking notes, or to communicate by writing notes, because he was unable to concentrate or focus sufficiently. He often interrupted counsel by asking the same questions over and over again, or making the same comments over and over again, and demanding answers to the same questions over and over again. Counsel believe [sic] that the condition of Mr. Yono deteriorated throughout the trial, as his frustration grew, and he was rendered incapable of rationally assisting counsel, and/or rationally making decisions, during the course of the trial.

(Def.'s Brief at 3.) As indicated above, however, counsel failed to bring these concerns to the attention of the Court during the pendency of the trial. The Court is not persuaded by these "post-conviction" arguments that Defendant was not competent to assist counsel at

12

trial.

Because counsel failed to alert the Court to her alleged competency concerns during trial, defense counsel also argues that the Court's observation of Defendant's demeanor should have led the Court to conclude independently that he was not competent to participate in the trial. Defendant's demeanor at trial, however, did not give the Court reasonable cause to believe that he may have been unable to assist in his own defense. While it is true that Defendant, at times, appeared to be upset with some of the questioning, and at times was unable to recall certain facts, these are not uncommon occurrences when a witness testifies. The Court did not observe anything so unusual in Defendant's demeanor or his testimony to raise a question in the Court's mind as to his ability to assist in the presentation of his defense. He expressed clear recollection with respect to most of the events about which he was questioned, and unhesitatingly testified that he never participated with Rosie Mary Gaston in the fraudulent conduct alleged by the government and, in fact, did not know, nor ever met, Rosie Mary Gaston. (Trial Trans. Vol. III at 228.)

The Court, therefore, rejects Defendant's claimed "lack of competency" as a basis for granting Defendant's motion for judgment notwithstanding the verdict or for new trial.

## IV. Conclusion

Defendant has failed to establish that his convictions were against the great weight of the evidence, that errors during trial denied him his constitutional rights, or that he was prejudiced by the failure to refer him for a competency evaluation.

Accordingly, the Court **DENIES** Defendant's Motion for Judgment In Favor of the

Defendant Notwithstanding the Verdict or, in the Alternative, for a New Trial.

                                                          <u>s/PATRICK J. DUGGAN</u>
                                                          UNITED STATES DISTRICT JUDGE

Copies to:
Leonid Feller, AUSA
Maria Mannarino, Esq.